IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELISSA A. HARRIMAN,

        Plaintiff,

   vs.                         Civil Action 2:12-CV-33
                                  Judge Graham
                                  Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. Background

    This is an action instituted under the provisions of 42 U.S.C. §405(g), for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 14, the Commissioner's *Memorandum in Opposition*, Doc. No. 19, and plaintiff's *Reply*. Doc. No. 20.

    Plaintiff Melissa A. Harriman filed her application for benefits on June 19, 2007, alleging that she has been disabled since January 1, 2000, as a result of a learning disability and blindness in her left eye. *PAGEID* 167-69, 176. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    A hearing was held on January 11, 2010, at which plaintiff, represented by counsel, appeared and testified, as did Walter B. Walsh who testified as a vocational expert. In a decision dated February 26, 2010, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PAGEID* 57-66.

The administrative law judge specifically found that plaintiff's severe impairments consist of a left eye impairment, asthma, low back pain, obesity, an affective disorder and borderline intellectual functioning. *PAGEID* 59. However, plaintiff does not suffer an impairment or combination of impairments that meets or equals a listed impairment, including Listing 12.05C, which addresses mental retardation. *Id.*, at 59, 61. The administrative law judge went on to find that plaintiff has the residual functional capacity for a reduced range of light work. *PAGEID* 61-64. Relying on the testimony of the vocational expert, the administrative law judge found that, despite plaintiff's impairments, her residual functional capacity would permit the performance of a significant numbers of jobs. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act.

That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 14, 2011. *PAGEID* 43-47.

## II.Standard

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human*

2

*Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

### III. Relevant Evidence

Plaintiff does not challenge the administrative law judge's evaluation of her exertional impairments. *Statement of Errors*, *PAGEID* 931, 937-42. Rather, plaintiff challenges the administrative law judge's evaluation of her mental impairments.  Because the Court concludes that the administrative law judge erred in his evaluation of Listing 12.05C, the Court concludes that the matter must be remanded for further proceedings.

Plaintiff has an eleventh grade, "limited" education in special education classes. *PAGEID* 64, 181. She has no prior relevant work experience. *PAGEID* 64, 177.  Plaintiff testified that she cannot understand what she is reading. *PAGEID* 74 She required help in applying for an Ohio identification card. *Id.*

Plaintiff testified that she cannot work because she has problems with her back and knees, is blind in one eye, is a "slow learner," and suffers

3

from bipolar disorder and depression. *PAGEID* 78-80. She lives with her mother, who cares for most daily activities such as housework and laundry. *PAGEID* 81.  Her brother had custody of plaintiff's children. *PAGEID* 78.

In 1994, plaintiff's full scale IQ measured 80 on the Wechsler Intelligence Scale for Children-III. *PAGEID* 345. In 1997, her composite score on the Stanford-Binet Intelligence Scale, 4th Edition, measured at 79. *Id.* A school psychologist interpreted these results as "suggest[ing] cognitive functioning within the borderline to low average range." *Id.* Plaintiff's special education teacher reported that plaintiff had "a difficult time comprehending written and verbal instructions" and needed "much individualized instruction and repetition." PAGEID 344. In May 2000, an evaluation team determined that plaintiff's cognitive and adaptive abilities fell in the developmentally handicapped range and she continued to show academic deficits. *PAGEID* 350.  According to plaintiff's May 2002 IEP, plaintiff was considered disabled due to "Mental Retardation (DH)." *PAGEID* 333.

In April 2006, plaintiff was evaluated by Tambrey Delbert, Ph.D., and Roger Wilcox, Ph.D., upon referral by the Department of Job and Family Services. *PAGEID* 303-07. The psychologists concluded that "[o]verall, cognitive and memory functioning were adequately developed." *PAGEID* 306. On the WRAT-3, plaintiff achieved fourth-grade equivalent abilities in reading, spelling and arithmetic. *PAGEID* 307. The psychologists diagnosed posttraumatic stress disorder, an adjustment disorder with depressed mood and a learning disorder, NOS.  *Id.* Plaintiff was assessed a Global Assessment of Functioning (GAF) score of 63.[1] *Id.* The psycholologists

_____

[1] Health care clinicians perform a Global Assessment of Functioning to determine a person's psychological, social, and occupational functioning on a hypothetical

concluded that plaintiff's psychological difficulties were "primarily expressions of more current losses as opposed to long-term difficulties." *Id.*

Drs. Delbert and Wilcox also completed a mental functional capacity evaluation, *PAGEID* 308-09, in which they opined, *inter alia*, that plaintiff was moderately to markedly limited in her abilities to work in coordination with or proximity to others without being distracted by them, to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to accept instructions and respond appropriately to criticism from supervisors. The psychologists concluded that plaintiff would be unemployable for up to 9 months based on the results of their examination. *PAGEID* 309.

Dr. Delbert evaluated plaintiff again in July 2007. *PAGEID* 313-17. At that time, plaintiff exhibited good immediate auditory memory skills, fair concentration and an adequate fund of knowledge. *PAGEID* 315. She demonstrated a full ability to understand directions. *PAGEID* 316. On the WRAT-3, plaintiff tested at the third-grade equivalent in reading, spelling and arithmetic. *Id.* Accordingly to Dr. Delbert, "[o]verall, cognitive and memory functioning were limited in some areas but generally adequate." *Id.* Dr. Delbert diagnosed an adjustment disorder with a depressed mood and a learning disorder, NOS. *PAGEID* 317. Plaintiff was assigned a current GAF score of 60. *Id.* Dr. Delbert concluded that plaintiff had "a significant

---

continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Hash v. Commissioner of Social Sec.*, 309 Fed.Appx. 981, 988 n.1 (6th Cir. 2009); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34. A GAF score of 61-70 describes a person with "mild symptoms or some difficulty with social, occupational or school functioning, but such a person can

amount of psychological difficulties especially associated with being learning disabled" and that "those conditions, coupled at times with her depressive symptoms, seem to impede her ability to secure and sustain adequate employment." *Id.*

In an assessment of plaintiff's mental functional capacity, Dr. Delbert opined that plaintiff was markedly impaired in her abilities to understand and remember very short and simple instructions and to carry out detailed instructions; moderately to markedly impaired in her ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and not significantly limited to moderately impaired in her abilities to maintain attention and concentration for extended periods sufficient to sustain an ordinary routine without special supervision, to accept instructions and respond appropriately to criticism from supervisors, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to be aware of normal hazards and take appropriate precautions and to travel in unfamiliar places or use public transportation. Dr. Delbert concluded that plaintiff would be unemployable for twelve months or more. *PAGEID* 312.

In September 2007, plaintiff underwent a consultive psychological evaluation at the request of the state agency by Lee Roach, Ph.D. *PAGEID* 435-42. Dr. Roach reported that plaintiff was oriented x 3. Her affect was constricted. Page ID 436. Plaintiff's immediate recall was adequate, and her long-term memory was functional. *Id.* On the WAIS-III, plaintiff achieved a verbal I.Q.score of 70, a performance I.Q. score of 72 and a

generally functioning pretty well and have some meaningful interpersonal

full scale score IQ score of 68. *PAGEID* 437.  All verbal and performance subtests were rated as "deficient." *PAGEID* 437-38. On the WRAT-4, plaintiff's spelling tested at less than a grade 2 equivalent, sentence comprehension fell in the 3rd to 4th grade range (3.4), and word reading and computation scores fell between a grade 4 and 5 level (4.5 and 4.6, respectively). *PAGEID* 438. According to Dr. Roach, these results placed plaintiff in the borderline range of intellectual functioning. Dr. Roach diagnosed a major depressive disorder, without psychotic features, recurrent, moderate to severe; a circadian rhythm sleep disorder; an acute stress disorder; a pain disorder with both psychological factors and a chronic medical condition; and borderline intellectual functioning. Dr. Roach assigned a current GAF score of 60. *PAGEID.* 440. Dr. Roach opined that plaintiff was able to complete simple, routine activity of daily living tasks at home, but not on a production line due to her slow work pace. *PAGEID* 441. Her mental ability to relate to others, including fellow workers and supervisors, was markedly impaired by her depression and anxiety symptoms, and she was unable to relate sufficiently to coworkers and supervisors for even simple, repetitive tasks. *Id.* Dr. Roach opined that plaintiff's  ability to deal with the day-to-day stress and job pressures is markedly impaired, particularly in the areas of concentration, attention, pace and persistence. *Id.* Dr. Roach concluded that plaintiff had the mental ability to perform at least simple repetitive household tasks and activities of daily living that would not involve public interaction. *Id.*

In October 2007, Roseann Umana, Ph.D., reviewed the record on behalf of the state agency and opined that plaintiff had a mild restriction on

---

relationships."  Id at 34.

her activities of daily living, and moderate difficulties in maintaining concentration, persistence, and pace, and in maintaining social functioning. *PAGEID* 458. According to Dr. Umana, plaintiff was capable of simple, routine tasks, would likely have difficulty with complex tasks, would benefit from a workplace with limited/superficial interactions with the general public, coworkers and supervisors and would benefit from a relatively static/stable workplace without strict quota/production/pace requirements. *PAGEID* 446. Another state agency psychologist, Catherine Flynn, Psy.D., reviewed the evidence and affirmed Dr. Umana's assessment in May 2008. *PAGEID* 534.

### IV.Discussion

Listing 12.05 requires, under appropriate circumstances, a finding of disability based on the claimant's mental retardation:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when . . .
>
> (C) [The claimant has demonstrated] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05(C).  A claimant must therefore establish three elements in order to satisfy Listing 12.05C: that she experiences "significantly subaverage general intellectual functioning with deficits in adaptive function [that] initially manifested during the developmental period" (*i.e.*, the diagnostic description); (2)that she has a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3)

that she suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* *See also Foster v. Harris,* 279 F.3d 348, 354-55(6th Cir. 2001).

In concluding that plaintiff's cognitive functioning does not satisfy Listing 12.05C, the administrative law judge reasoned as follows:

> . . .[T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  Although the claimant's full scale IQ score was 68 during a consultative psychological examination in September 2007, she does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

*PAGEID* 61 (emphasis added).  Because the administrative law judge had previously found that plaintiff suffers other severe physical and mental impairments, this finding is not supported by substantial evidence.

The Commissioner concedes that the administrative law judge erred in this regard.  *Memorandum in Opposition, PAGEID* 959.  However, the Commissioner characterizes that error as harmless and takes the position that plaintiff's cognitive functioning does not meet Listing 12.05C because plaintiff cannot establish the first element of the Listing, *i.e.,* significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.  *Id.  However,* that determination, which requires the consideration and evaluation of the evidence in the record, is for the administrative law judge – not this Court - to resolve in the first instance. *See Faucher v. Sec'y of Health and Human Servs*., 17 F.3d 171, 176 (6th Cir. 1994)("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and

immediately [resolve the application for benefits] only if all essential factual issues have been resolved. . . .")

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded to the Commissioner of Social Security for further proceedings.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date: February 4, 2013                    *s/Norah McCann King*
                                          Norah McCann King
                                          United States Magistrate Judge